UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** CR-09-304 JMR/JJK |
| | ) | |
| Plaintiff, | ) | (18 U.S.C. § 371) |
| | ) | (18 U.S.C. § 981(a)(1)(C)) |
| v. | ) | (18 U.S.C. § 1341) |
| | ) | (26 U.S.C. §7202) |
| TIMOTHY LYNN BELIVEAU, | ) | (28 U.S.C. § 2461(c)) |
| | ) | |
| | ) | |
| Defendant. | ) | |

THE UNITED STATES GRAND JURY CHARGES THAT:

INTRODUCTORY ALLEGATIONS RELATING TO COUNTS 1-3

1.  At all times relevant to this Indictment, defendant Timothy Lynn Beliveau was an individual resident of the State of Minnesota.

2.  At all times relevant to this Indictment, American Alliance Mortgage Group, Inc. ("AAMG") was a Minnesota corporation wholly owned by defendant Timothy Lynn Beliveau which held itself out as a mortgage broker with offices located in Minnetonka, Plymouth, Roseville, Wayzata, Edina and Hudson, Wisconsin.

3.  At all times relevant to this Indictment, U.S. Housing & Financial Services, LLC ("U.S. Housing") was a Minnesota Limited Liability Company wholly owned by defendant Timothy Lynn Beliveau which held itself out as a company that assisted distressed homeowners in foreclosure.

SCANNED
OCT 2 2 2009
U.S. DISTRICT COURT MPLS

FILED OCT 2 1 2009
RICHARD D. SLETTEN
JUDGMENT ENTD _____
DEPUTY CLERK _____

U.S. v Timothy Lynn Beliveau

## COUNT 1
(18 U.S.C. § 371: Conspiracy to Commit Mail Fraud)

4. Beginning in approximately January of 2004 and continuing through July of 2007, in the State and District of Minnesota, the defendant,

**TIMOTHY LYNN BELIVEAU,**

did unlawfully, willfully and knowingly conspire, combine, confederate and agree with other persons known and unknown to the grand jury to commit an offense against the United States, that is, to devise a scheme and artifice to defraud, and to obtain money and property by means of material false and fraudulent representations and promises and, for the purpose of executing such scheme, to cause to be placed in the United States mails to be sent and delivered by the United States Postal Service and to take and receive therefrom matters and things, and to deposit matters and things to be sent and delivered by private and commercial interstate carriers, and to take and receive therefrom matters and things, in violation of Title 18, United States Code, Section 1341.

## OBJECTS OF THE CONSPIRACY

5. It was an object of the conspiracy fraudulently to induce investors to purchase distressed real estate at inflated prices with borrowed funds pursuant to a "mortgage reconveyance" program, thereby creating a pool of funds which the defendant and a coconspirator converted to their own use.

U.S. v Timothy Lynn Beliveau

6. It was another object of the conspiracy to solicit directly from the investors in excess of $1 million for the purported purpose of investing in real estate, but which the defendant instead diverted to pay personal expenses.

7. It was another object of the conspiracy to commit mortgage fraud by inducing investors RC and LC to purchase real estate in their own names at fair market value and then subsequently causing the real estate to be sold (in one instance, to defendant Beliveau himself) the proceeds from which the defendant and a coconspirator converted to their own use.

## MANNER AND MEANS

It was part of the conspiracy that from in or about January of 2004 through at least July of 2007:

8. The defendants utilized U.S. Housing to set up and to promote a "reconveyance program" in which the defendant falsely represented to some of the homeowners that i) individual homeowners in or near foreclosure could sell their homes to investors recruited by U.S. Housing; ii) continue to live in the homes under contracts for deed with the investors; and iii) purchase the homes back from the investors after their credit had been "repaired" by making the monthly contract-for-deed payments to U.S. Housing, even though the reconveyance program artificially increased the purchase price of the homes and therefore made it extremely difficult for the homeowners to reacquire them.

U.S. v Timothy Lynn Beliveau

9. In other cases, the defendant misled the homeowners into believing that they would not be selling their homes and that their names would remain on title.

10. In all cases, investors purchased the distressed homes with the proceeds of mortgage loans brokered by AAMG, which charged substantial mortgage origination fees and yield spread premiums for that service.

11. The defendant promoted the reconveyance program by falsely representing that, upon the closing of each sale of a home to an investor, the equity created by the transaction (that is, the amount by which the inflated price of the property exceeded the homeowner's mortgages on the property) would be deposited into an "escrow account" to be administered by the defendant and his coconspirators to assist the homeowners in both making their monthly contract-for-deed payments and in repurchasing the homes from the investors.

12. The defendant also falsely assured the investors that an unindicted coconspirator had carefully screened the homeowners to ensure that their financial distress was merely situational; that the homeowners were therefore likely to make their monthly contract for deed payments; that an unindicted coconspirator would provide credit and financial counseling to those homeowners who missed a contract-for-deed payment; that homeowners who fell into default would be evicted and their payments covered by monies in the escrow

U.S. v Timothy Lynn Beliveau

account; and that the investor would under no circumstances be responsible for paying the monthly mortgage payments on the loans they took out to purchase the homes.

13.  To maximize the amount of money deposited into the escrow account, the defendant utilized an appraiser who prepared appraisal reports assigning higher values to the homes than any reasonable buyer would pay for them in order to trick lenders into believing that the homes adequately collateralized the loans taken out by the investors to purchase them.

14.  To further enlarge the pool of money in the escrow account, the defendant caused the distressed homeowners' monthly contract-for-deed payments to be deposited into the escrow account purportedly to service the investors' loans but which he instead diverted to pay for his lavish lifestyle.

15.  When the investors became aware that the mortgage loans they had been fraudulently induced to obtain were in default, the defendant recruited an unindicted coconspirator to make various false statements to the investors to lull them into inaction, such as assuring the investors that the mortgage payments had been made by U.S. Housing but that processing of the payments had been delayed because the loans had been sold in the secondary market.

16.  In addition to diverting escrow funds to his own use, the defendant caused very substantial and commercially unreasonable administrative fees, origination fees and real estate fees,

5

U.S. v Timothy Lynn Beliveau

including an 18 percent "reconveyance fee," to be paid to himself and his coconspirators out of the proceeds of each sale from a distressed homeowner to an investor.

17. The defendant further enlarged the pool of funds available to sustain his lavish lifestyle by soliciting directly from the investors an additional amount that exceeded $1 million for the purported purpose of being invested in a program that was based on defendant Beliveau's purported expertise in buying and selling homes but which the defendant instead simply converted to his own use.

18. Ultimately, most of the distressed homeowners were unable to reacquire their homes, and the loans taken out by the investors to acquire the distressed homes went into default, in substantial part because the defendant spent the money deposited into the escrow account for luxury items such as boats, motorcycles, a Florida vacation home, and elective medical procedures, and to otherwise sustain a lavish lifestyle, rather than using the funds to pay down the investors' mortgage loans.

19. Ultimately, the defendant's scheme occasioned losses to approximately 14 investors, the investors' mortgage lenders and 35 distressed homeowners in an amount exceeding $2.5 million.

## OVERT ACTS

In furtherance of the conspiracy and to achieve its object, defendant Timothy Lynn Beliveau committed, directly and through

U.S. v Timothy Lynn Beliveau

accomplices, among other acts, the following overt acts:

### Victim T.P.

20. On or about June 18, 2004, defendant Timothy Lynn Beliveau caused homeowner victim T.P. unwittingly to sell her Minneapolis home to investor L.M. at an inflated price, and then caused investor L.M. to sell the house back to T.P. pursuant to a contract for deed which was neither explained to victim T.P. nor filed (as it should have been to protect T.P.'s interest in the home as contract-for-deed vendee) with the Hennepin County Recorder's Office.

21. On or about January 13, 2006, defendant Timothy Lynn Beliveau caused investor L.M. to sell victim T.P.'s former Minneapolis residence to investor D.B., enabling an unindicted coconspirator to take a "real estate commission" of $99,881.54 from the transaction and to completely extinguish victim T.P.'s interest in the home as contract-for-deed vendee.

### Victims S.B. and D.B.

22. On or about July 19, 2004, defendants Timothy Lynn Beliveau caused U.S. Housing to mail to victims S.B. and D.B. a letter advertising the reconveyance program described above which resulted in S.B. and D.B. enrolling in the reconveyance program and being defrauded of the equity in their home.

U.S. v Timothy Lynn Beliveau

### Victims R.C. and L.C.

23. On or about August 1, 2006, defendant Timothy Lynn Beliveau purchased a home located in Orono, Minnesota (from one of the investors who had purchased it a year earlier for fair market value pursuant to the "investment" program described in paragraph 16 above) for $800,000 more than its true market value entirely with borrowed funds in order to steal that amount from his mortgage lender.

24. On or about August 1, 2006, an unindicted coconspirator deposited into a checking account at Venture Bank a check representing $436,190.44 of the proceeds of the mortgage fraud described in paragraph 23 above.

### Victims R.C. and L.C.

25. On or about March 28, 2006, defendant Timothy Lynn Beliveau caused investors RC and LC to sell to investors RS and PS a home located in Mound, Minnesota pursuant to a financing arrangement that enabled an unindicted coconspirator to take an unearned "real estate commission" of $192,460.25.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 2-3**
(18 U.S.C. § 1341: Mail Fraud)

26. The grand jury realleges the allegations set forth in paragraphs 1 - 25 above, and incorporates them as though fully set out herein for the purpose of alleging the substantive mail fraud

U.S. v Timothy Lynn Beliveau

counts listed below.

27. Beginning in or about 2004 and continuing through in or about July of 2007, within the State and District of Minnesota and elsewhere, the defendant,

**TIMOTHY LYNN BELIVEAU,**

did knowingly execute and attempt to execute a scheme and artifice to defraud distressed homeowners of the equity in their homes; investors in the reconveyance program; and mortgage lending institutions, and to obtain money and property from these victims by means of material false and fraudulent pretenses, representations and promises and, for the purpose of carrying out the scheme to defraud described in paragraphs 1 - 25 of this Indictment, did knowingly cause to be delivered by mail and commercial carrier according to the direction thereon, the matters particularly set forth and described below:

| COUNT | ON OR ABOUT DATE | U.S. MAIL OR COMMERCIAL CARRIER | DESCRIPTION OF MAILING |
|---|---|---|---|
| 2 | 12/9/05 | U.S. Mail | $2550 check dated 12/9/05 from West Bay Capital to investor T.M. |
| 3 | 8/1/06 | Commercial Carrier | HUD-1 from Elite Title Services to Silver State Mortgage, 108 S. Church Street, McKinney, TX 75069 |

All in violation of Title 18, United States Code, Section 1341.

9

U.S. v Timothy Lynn Beliveau

INTRODUCTORY ALLEGATIONS RELATING TO COUNTS 4 - 12

28. At all times relevant to this Indictment, defendant Timothy Lynn Beliveau owned all of the outstanding capital stock of AAMG, which employed, from time to time, up to 100 individuals as telemarketers and loan officers during the period beginning in October of 2002 and ending in December of 2005.

29. At all times relevant to this Indictment, defendant Timothy Lynn Beliveau was the officer of AAMG charged with the duty to collect and truthfully account for and pay over the income tax, Federal Insurance Contributions Act tax and Medicare tax (collectively, the "Trust Fund Taxes") withheld from the paychecks of the employees of AAMG to the Internal Revenue Service ("IRS").

30. During the period beginning October 1, 2002 and ending September 30, 2005, defendant Timothy Lynn Beliveau collected, but willfully failed to account for and pay over to the IRS, $901.985.94 in Trust Fund Taxes.

### COUNTS 4 - 12
(26 U.S.C. § 7202: Willful Failure to Account for and Pay Over Tax)

31. On or about the dates set forth below, in the State and District of Minnesota, the defendant,

**TIMOTHY LYNN BELIVEAU,**

did willfully fail to truthfully account for and pay over to the IRS the Trust Fund Taxes which had been withheld from the employees

U.S. v Timothy Lynn Beliveau

of AAMG, during the periods and in the amounts indicated in the following table:

| COUNT | ON OR ABOUT DATE | QUARTER ENDED | AMOUNT TIMOTHY LYNN BELIVEAU COLLECTED DURING QUARTER BUT WILLFULLY FAILED TO ACCOUNT FOR AND PAY OVER TO THE IRS |
|---|---|---|---|
| 4 | 10/31/03 | 9/30/03 | $91,626.77 |
| 5 | 1/31/04 | 12/31/03 | $80,195.97 |
| 6 | 4/30/04 | 3/31/04 | $93,721.32 |
| 7 | 7/31/04 | 6/30/04 | $102,345.39 |
| 8 | 10/31/04 | 9/30/04 | $98.298.83 |
| 9 | 1/31/05 | 12/31/04 | $91,903.95 |
| 10 | 4/30/05 | 3/31/05 | $95,254.93 |
| 11 | 7/31/05 | 6/30/05 | $87,908.93 |
| 12 | 10/31/05 | 9/30/05 | $71,767.86 |

All in violation of Title 26, United States Code, Section 7202.

**FORFEITURE ALLEGATIONS**

Counts 1 through 3 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

As the result of the offenses alleged in Counts 1 through 3 of

11

U.S. v Timothy Lynn Beliveau

this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 371 and 1341.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 371 and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____     _____
UNITED STATES ATTORNEY          FOREPERSON