**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Crim. No. 09-304 (JMR/JJK) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Timothy Lynn Beliveau, | |
| Defendant. | |

David J. MacLaughlin, Assistant United States Attorney, counsel for Plaintiff.

Doug Olson and Reynaldo A. Aligada, Jr., Assistant Federal Defenders, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure (Doc. No. 18), Defendant's Pretrial Motion to Suppress Statements (Doc. No. 19), and Defendant's Motion for Severance of Tax Counts (Doc. No. 20). The motions have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Dist. Minn. Loc. R. 72.2. This Court held a hearing on the motions on December 2, 2009, and received testimony from Internal Revenue Service Special Agent Vicki Petricka. (Doc. No. 23.) This Court received one exhibit from the Government, which was a document entitled "Non-Custody Statement of Rights"

that Agent Petricka presented to Defendant prior to a discussion they had regarding her investigation.

## BACKGROUND

Defendant Timothy Lynn Beliveau is charged with conspiracy to commit mail fraud under 18 U.S.C. § 371, mail fraud under 18 U.S.C. § 1341, and willful failure to account for and pay over tax under 26 U.S.C. § 7202. (Doc. No. 1.)

In November 2006, IRS Special Agent Vicki Petricka was conducting an investigation of Defendant for failure to remit employment taxes he had collected from employees of American Alliance Mortgage Group ("AAMG"), a Minnesota mortgage-brokerage firm owned by Defendant. Agent Petricka testified that this was a criminal investigation, which was administrative in nature, and did not involve the grand jury or the United States Attorney's Office.[1] According to Agent Petricka, only the IRS's criminal investigation unit is involved in such an administrative investigation. Neither the United States Attorney's Office nor any of its attorneys are allowed to be involved in or to know anything about an administrative tax investigation. However, Agent Petricka testified that she does occasionally consult with attorneys in her office with the IRS when she has legal questions in connection with such an administrative tax investigation, but she does not function as their agent and is not under their supervision.

---

[1] At the same time that Agent Petricka was conducting the administrative, criminal tax investigation of AAMG and Defendant, she was aware that there was another investigation into Defendant's affairs. The Postal Inspection Service was conducting that separate investigation. But Agent Petricka was not involved in that investigation.

2

As part of her administrative tax investigation, Agent Petricka issued a summons to AAMG to gather accounting records. The summons directed that the AAMG accounting and employment-tax records be delivered to Agent Petricka's office in St. Paul on November 20, 2006. Shortly before the due date for the response for the summons, Agent Petricka received a telephone call from attorney Ryan Simafranca, who said he represented Defendant and wanted to discuss the summons. Agent Petricka told Mr. Simafranca that he would have to file an IRS Power of Attorney form (Form 2848), indicating that he represented Defendant before she could discuss the matter with Mr. Simafranca. Mr. Simafranca filed Form 2848 with the IRS, and Agent Petricka then told Mr. Simafranca that she would extend the due date for Defendant's response to the summons to November 30, 2006, and that the records she sought should be delivered by that date. Mr. Simafranca agreed to this extension on behalf of Defendant.

Although the summons did not require Defendant to deliver the records himself, and although Agent Petricka did not tell Mr. Simafranca that Defendant needed to appear at her office, Defendant brought the records himself to Agent Petricka's office on November 30, 2006. Agent Petricka testified that Defendant and AAMG could have complied with the summons by sending the requested records by mail or courier. On November 30, 2006, Defendant called Agent Petricka on his cell phone from his truck on his way to the IRS office, and Agent Petricka then met Defendant at the loading dock in the building. She testified

3

that when she introduced herself to Defendant, she explained that she was part of the criminal-investigation unit and that the matter she was investigating was criminal, and not civil, in nature. There was a large volume of records, and Defendant and Agent Petricka wheeled two carts of documents from the loading dock up to Agent Petricka's office. Defendant provided Agent Petricka with an inventory list for the documents, and Agent Petricka and Defendant then inventoried the documents in a room near her office. Defendant initiated this inventorying process.

Agent Petricka testified that after they inventoried the records Defendant provided, she asked Defendant if he wished to talk about the records. She testified that when she brought the subject up, she specifically reminded Defendant that he was represented by Mr. Simafranca. She told Defendant that he was under no obligation to speak to her, and she told him that he could consult with Mr. Simafranca before talking to her about the records. She testified that she made these statements to Defendant while they were standing in the room where the boxes of records had just been stored. She testified that she mentioned Mr. Simafranca by name.

In response, Defendant agreed to speak to Agent Petricka, notwithstanding his representation by Mr. Simafranca. Defendant, Special Agent Petricka, and another IRS special agent named Martha Bravo then went to a table to begin the interview. Agent Petricka testified that before the interview began, she again told Defendant that he did not have to speak to her and that he

4

had the right to consult with his attorney before answering any questions. She also stated that she did not call Mr. Simafranca to ask him whether he approved of her conducting an interview with Defendant and that she did not consult with any attorney in her office about the decision not to contact Mr. Simafranca because she did not know that Defendant would be appearing at her office. She testified that she read verbatim a warning card entitled "Non-Custody Statement of Rights" to Defendant before any questioning began. (Gov't's Ex. 1.) The Non-Custody Statement of Rights includes the following:

> As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses. In connection with my investigation of your tax liability (or other matter), I would like to ask you some questions. However, first I advise you that under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if you wish, seek the assistance of any attorney before responding.

(*Id.*)

Agent Petricka testified that Defendant appeared to be sober, calm, and coherent and understood the warnings. She testified that she made no threats to him or any promises as an inducement to speak, and that she did not use any show of force whatsoever prior to or during the interview. According to Agent Petricka, Defendant told her that he understood his rights and that he would simply stop talking to her and leave if he grew uncomfortable with the

5

questioning.  The interview lasted approximately one hour and forty-five minutes.  She also testified that at no point during the interview did Defendant request to speak with his attorney or ask that the questioning discontinue, but near the end of the interview, Defendant asked Agent Petricka if people who are being investigated in similar matters generally hire an attorney.  Agent Petricka told Defendant that such people generally do hire an attorney.

Agent Petricka testified that, at the time of the interview on November 30, 2006, no adversarial criminal proceedings had been initiated against Defendant, and no decision had been made by her whether or not to recommend prosecution of Defendant to her superiors.

## DISCUSSION

**I.      Defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure**

On November 20, 2009, Defendant filed a motion to suppress fruits of an unlawful search and seizure.  However, Defendant has presented no argument regarding any search that was conducted by the Government with or without a warrant.  Nor has Defendant made any request that any specific evidence seized by the Government during its investigation should be suppressed.  And the record contains no information on which this Court could determine that any search and seizure the Government did perform was conducted unlawfully.  Therefore, this Court recommends that Defendant's motion to suppress evidence be denied.

## II. Defendant's Pretrial Motion to Suppress Statements

Defendant has also filed a motion to suppress statements, and he has presented argument with respect to the statements he provided to Agent Petricka during the November 30, 2006 interview discussed above. Defendant argues that his Sixth Amendment right to counsel was violated when he made statements to the IRS agents in the November 30, 2006 interview, and such statements should be suppressed as a result. (Doc. No. 26, Def.'s Mem. in Supp. of Pretrial Mots. ("Def.'s Mem.").) However, "the Sixth Amendment right to counsel does not attach until 'the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality opinion); *United States v. Morriss*, 531 F.3d 591, 593 (8th Cir. 2008). It is undisputed that when Defendant was interviewed on November 30, 2006, no criminal prosecution had commenced. The fact that a person who is being investigated by the Government with respect to a criminal matter has retained an attorney does not mean that the Sixth Amendment Constitutional right to an attorney then attaches. *See Moran v. Burbine*, 475 U.S. 412 (1985), the Supreme Court explicitly rejected any such notion:

> As a practical matter, it makes little sense to say that the Sixth Amendment right to counsel attaches at different times depending on the fortuity of whether the suspect or his family happens to have retained counsel prior to interrogation. More importantly, the suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel. The Sixth Amendment's

7

> intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor . . . By its very terms, it becomes applicable only when the government's role shifts from investigation to accusation.

*Id.* at 428-30.

Defendant argues that "[t]he issue is not one of attachment of the right, the right was already attached by virtue of Mr. Beliveau's retention of counsel. The question is whether the government agent nonetheless procured a knowing and intelligent waiver of said right." (Def.'s Mem. 3.) But, if there is no pre-prosecution Sixth Amendment right to counsel (i.e., nothing to "attach"), then there is nothing to waive, and thus, contrary to Defendant's assertion, the "question" is not whether there is a knowing and intelligent waiver of the right to counsel.

The issue of a pre-prosecution, informed waiver of the right to counsel could arise in connection with the application of the Fifth Amendment right against self-incrimination when a custodial interrogation occurs. Here, the Defendant has raised no such Fifth Amendment issue, presumably because the Defendant was not in custody when the interview in the IRS office occurred. *See United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990) (providing six factors to consider in determining whether an individual is in "custody" for purposes of Fifth Amendment analysis). Moreover, the facts and circumstances here establish that Defendant knowingly and intelligently waived his right to consult with counsel. Agent Petricka warned Defendant several times that he had the

right to talk to Mr. Simafranca and that he did not have to answer any of her questions. Agent Petricka specifically mentioned Mr. Simafranca by name when she warned Defendant that he had this right to counsel. The IRS Non-Custody Statement of Rights (Gov't's Ex. 1), which Agent Petricka said that she read to Defendant verbatim, advised Defendant that: "You may, if you wish, seek the assistance of any attorney before responding." The "totality of the circumstances surrounding the interrogation" established that Defendant made the "uncoerced choice" with the "requisite level of comprehension" to waive any right to counsel he may have had. *See Moran*, 475 U.S. at 421.

Defendant next argues that even if his interview statements are not excluded on constitutional grounds, they should be excluded because "the Agent's deliberate decision to circumvent [Defendant's] attorney is a clear violation of the Minnesota Rules of Professional Conduct." (Doc. No. 26 at 4.) Minnesota Rules of Professional Conduct 4.2 prevents attorneys from communicating with a person represented by a lawyer about the subject of the representation unless the lawyer has the consent of the other lawyer. Rule 5.3 of the Minnesota Rules of Professional Conduct provides that a lawyer is responsible for the conduct of a nonlawyer that would be a violation of the Rules of Professional Conduct if the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct involved.

Even if there is a violation of the Rules of Professional Conduct, there is an underlying question of whether the exclusionary rule should be invoked as an

appropriate remedy for such an ethical violation.  The Rules of Professional Conduct are not designed to enforce constitutional rights; they are "designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies."  Minn. R. Prof. Conduct, Scope cmt. 20.  Thus, a rule violation "does not necessarily warrant any . . . nondisciplinary remedy" such as suppression of a defendant's statement as a sanction for a putative violation of Rule 4.2.

However, as the Minnesota Supreme Court has noted, "nearly every court that has ruled on [a no-contact rule violation in a criminal law context] has found that suppression of a [statement] is an inappropriate remedy for a lawyer's ethical violation."  *State v. Clark*, 738 N.W.2d 316, 340 (Minn. 2007) (citing *State v. McCarthy*, 819 A.2d 335, 341 (Me. 2003)) (alteration in original); *State v. Johnson*, 318 N.W.2d 417, 437 (Iowa 1982); *State v. Morgan,* 646 P.2d 1064, 1070 (Kan. 1982); *People v. Green,* 274 N.W.2d 448, 454-55 (Mich. 1979); *State v. Decker*, 641 A.2d 226, 229-30 (N.H. 1994); *State v. Ford*, 793 P.2d 397, 399-400 (Utah Ct. App. 1990).  The Minnesota Supreme Court itself did not adopt "a per se rule placing suppression of [a] defendant's statement outside the ambit of possible sanctions for a violation of Rule 4.2."  *Clark*, 738 N.W.2d at 340-41.  Rather, "Minnesota applies a rule whereby the court must evaluate the egregiousness of the violation, and in some instances, suppression may be warranted."  *United States v. Petters*, Crim. No. 08-364(1) (RHK/AJB), 2009 WL 1519888, at *9 (D. Minn. Apr. 28, 2009) (citing *Clark*, 738 N.W.2d at 341).  This is

a sensible approach which allows the trial court to use the remedy of excluding evidence of guilt only in a situation where an attorney's conduct is so flagrant that the court must exercise its inherent supervisory power to avoid compromising the administration of justice.

Here, assuming that federal courts were to apply the exclusionary rule to Rule 4.2 violations in the same way as the Minnesota Supreme Court, the Government's conduct does not rise to the level of egregious conduct in violation of Rule 4.2 that would require suppression of Defendant's statements. For one thing, there is no evidence that any Government attorney ordered or ratified Agent Petricka's conduct here, so there is no *egregious* violation of Rule 4.2 by any identified attorney. In fact, the record reflects that Agent Petricka does not act as an agent of the attorneys in her office at the IRS with whom she occasionally consults during criminal/administrative tax investigations such as the one she conducted here. In fact, in these circumstances, there is no apparent involvement of any attorney at all. The police conduct found to be an egregious violation of Rule 4.2 in *State v. Miller*, 600 N.W.2d 457, 464 (Minn. 1999), presents a useful comparison. There, officers who were serving a search warrant against a business under investigation by state and local authorities interviewed one of the business's employees even though the attorney representing the business told the officer that no statement should be taken outside the lawyer's presence. The officer refused to let the lawyer speak with the employee/defendant, the assistant county attorney ratified this decision when

contacted by the business's attorney, and the police officers barred the attorney from the building where the interview was occurring and would not let the lawyer speak with any of the employees.  The Minnesota Supreme Court held that, under those circumstances, the defendant's statements taken after his lawyer contacted the officer at the site must be suppressed.  *Miller*, 600 N.W.2d at 468.  Here, unlike the investigators in *Miller*, Agent Petricka had no information that Mr. Simafranca disapproved of the interview, even though they had spoken prior to the interview taking place.  Nor did Agent Petricka or any other IRS investigator make any effort to bar Defendant from consulting with his attorney.  To the contrary, Agent Petricka made it abundantly clear to Defendant that he did not have to participate in the interview and that he was entitled to consult with an attorney, and specifically with Mr. Simafranca, prior to the interview.  Thus, applying Minnesota's egregiousness test for determining whether violations of Rule 4.2 require suppression to these circumstances, this Court concludes that suppression is not warranted in this case.

### III. Defendant's Motion for Severance of Tax Counts

Finally, Defendant filed a motion to sever the tax counts in the Indictment from the fraud counts asserted therein on the grounds that "each crime is separate and distinct, there is no carryover of the proof necessary to prove each group of crimes, and the prejudicial effect of joinder of tax counts in a fraud trial weighs heavily in favor of severance."  (Def.'s Mem. 5.)  Rule 8(a) of the Federal Rules of Criminal Procedure permits the joinder of multiple offenses against a

defendant in an indictment if they "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The Eighth Circuit has stated that "similar character" means "'[n]early corresponding; resembling in many respects; somewhat alike; having a general likeness.'" *United States v. Tyndall*, 263 F.3d 848, 850 (8th Cir. 2001) (quoting *United State v. Lindsey*, 782 F.2d 116, 117 (8th Cir. 1986)).

This Court agrees with Defendant's assertion that the tax counts are improperly joined under Rule 8(a) and, therefore, does not address Defendant's argument regarding prejudice. As mentioned above, Defendant has been charged with one count of conspiracy to commit mail fraud (18 U.S.C. § 341), two counts of mail fraud (18 U.S.C. § 1341), and eight counts of willfully failing to collect and pay over taxes (26 U.S.C. § 7202). All of these crimes will involve proof of Defendant's intent. As for the tax counts, a violation of 26 U.S.C. § 7202 requires proof that a defendant committed a "'voluntary, intentional violation of a known legal duty.'" *United States v. Wetzel*, No. 05-CR-009(1) (JMR/FLN), No. 08-CV-6123 (JMR), 2009 WL 624066, at *2 (D. Minn. Mar. 11, 2009) (quoting *United States v. Bishop*, 412 U.S. 346, 360 (1973)); *see also Stake v. United States*, 347 F. Supp. 823, 827 (D. Minn. 1972) (explaining that under 26 U.S.C. § 7202, the term "willfully" means "'a deliberate choice voluntarily, consciously and intentionally made to pay other creditors instead of paying the Government'") (quotations omitted). Similarly, the mail fraud counts require proof of intent.

13

*United States v. Manzer*, 69 F.3d 222, 226 (8th Cir. 1995) ("Intent to defraud is an essential element to establishing both the substantive mail and wire fraud counts."). Thus, it appears that all the offenses charged will require some proof of Defendant's intent.[2]

The Government asserts that joinder is proper because all the counts alleged require some proof of intent and the funds Defendant obtained by willfully failing to collect and pay over payroll taxes for AAMG's employees were commingled with the funds he obtained in the mortgage-reconveyance scheme. (Doc. No. 27, Gov't's Resp. to Def.'s Mem. in Supp. of Pretrial Mots. ("Gov't's Resp.") 8.) Further, the Government asserts that Defendant used such commingled funds for his personal benefit. (*Id.*) And the Government contends that the bank records it will offer to prove Defendant's intent to defraud are the same as those it will offer to prove Defendant's willfulness in failing to collect and pay over taxes. (*Id.*) Thus, the Government concludes that Defendant's commingling of funds for the purpose of spending money on himself, "goes to the mens rea of both offenses [and] [t]o sever the tax counts from the fraud counts would work a tremendous inefficiency in trying this case." (*Id.* at 9.)

The Government's assertions about commingling of funds and how it will use the same bank records to show Defendant's intent with respect to both the fraud counts and the tax counts are, however, of no weight in determining

---

[2] The conspiracy count under 18 U.S.C. § 371, which is premised on the alleged fraudulent scheme charged under § 1341, would depend on proof of Defendant's intent to defraud as well.

14

whether the offenses are improperly joined; the allegations of such commingling do not appear anywhere on the face of the Indictment. *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998) ("An indictment must reveal on its face a proper basis for joinder."); *see also United States v. Roberts*, Crim. No. 08-213 (RHK/AJB), 2009 WL 997309, at *1 (D. Minn. Apr. 14, 2009) (citing *Wadena*, 152 F.3d at 848). Thus, the Government's only argument that joinder of the tax and fraud counts is appropriate relies on allegations that are irrelevant to this Court's consideration of proper joinder under Rule 8. *See Roberts*, 2009 WL 997309, at *1 n.1 (noting that the Government's assertion that the defendant failed to disclose a bribe that he allegedly received as income on his tax records was irrelevant because the purported income was not mentioned anywhere in the tax counts in the indictment).

Moreover, even if it were proper to consider the Government's assertions about the bank-account records that purportedly reveal Defendant's intent, the efficiencies to be gained in proving his intent by presenting such records to the jury does not mean that the joined offenses are similar in character.[3] The fact that there may be evidence probative of Defendant's intent common to the tax and fraud counts is relevant to joinder, but "Congress did not provide for joinder for unrelated transactions and dissimilar crimes merely because *some* evidence

---

[3] It does not appear that the Government has asserted that the tax counts are part of the same act or transaction or that they constitute parts of a common scheme or plan, but rather, has considered them to be similar in character because they involve overlapping evidence. *See* Rule 8(a).

15

might be common to all of the counts." *United States v. Randazzo*, 80 F.3d 623, 628 (1st Cir. 1996) (emphasis added). Thus, the fraud and counts are not of a similar character merely because the Government may use evidence of Defendant's banking activity to suggest that Defendant intended to defraud real-estate investors and that he intended to not collect and pay over taxes.

This is not a case in which reading the indictment "as a whole, with attention to the various allegations against [Defendant], the logical relationship among the charges is underscored." *United States v. Grey Bear*, 863 F.2d 572, 582-83 (8th Cir. 1988). Rather, with respect to the fraud counts, it appears that the Government will present evidence that Defendant operated one company, US Housing Financial Services, LLC, to further a complex mortgage-reconveyance scheme. To prove that Defendant used such a scheme, the Government will present evidence regarding misrepresentations in soliciting funds from real-estate investors and other misrepresentations he made to homeowners who were in or near foreclosure. To prove the tax counts, however, the Government will present evidence that as the owner of AAMG, a different company, Defendant employed a number of people as telemarketers and loan officers and that he failed to collect and pay over taxes withheld from their paychecks. It is difficult to discern how counts premised on such different facts would fit any definition of "similar character" that would not stretch the phrase beyond its natural meaning. *See Roberts*, 2009 WL 997309, at *1 (rejecting the Government's argument that the tax counts and bribery counts asserted in the

indictment were similar because they were all "crimes of dishonesty"; such an interpretation would render the phrase "similar character" meaningless). As in *Roberts*, where the District Court observed that failing to disclose income on a tax return was not "similar to" the violation of the public trust effected by police officers' acceptance of bribes, *Id.*, here, failing to collect and pay over taxes is not, in any realistic sense, similar to the crime of defrauding real-estate investors and stripping equity from homeowners.

In this Court's view, the tax counts and fraud counts do not fit the Eighth Circuit's definition of "similar character" as that phrase is used in Rule 8(a). The majority of the evidence used to prove that Defendant willfully failed to collect and pay over taxes will not overlap with the evidence that the Government will need to introduce to prove that Defendant defrauded investors through a complex mortgage-reconveyance scheme. For these reasons, this Court recommends that Defendant's motion for severance of the tax counts from the fraud counts be granted.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Pretrial Motion to Suppress Fruits of Unlawful Arrest and Search and Seizure (Doc. No. 18), be **DENIED**;

2. Defendant's Pretrial Motion to Suppress Statements (Doc. No. 19), be **DENIED**; and

3. Defendant's Motion for Severance of Tax Counts (Doc. No. 20), be **GRANTED** and that counts 1-3 be severed from counts 4-12.

Dated: January 22, 2010

                                     *s/ Jeffrey J. Keyes*
                                     JEFFREY J. KEYES
                                     United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 5, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.